UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GEORGE S.,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

Case No.: 20cv0773-RBB

**ORDER DENYING PLAINTIFF'S MOTION FOR REVERSAL AND/OR REMAND [ECF NO. 17]**

On April 23, 2020, Plaintiff George S.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits and supplemental security income [ECF No. 1]. On May 11, 2020, Plaintiff consented to the jurisdiction of

[1] The Court refers to Plaintiff using only his first name and last initial pursuant to the Court's Civil Local Rules. See S.D. Cal. Civ. R. 7.1(e)(6)(b).

this Court [ECF No. 8].[2] Defendant filed the Administrative Record on July 20, 2020 [ECF No. 13]. On August 25, 2020, Plaintiff filed a Motion for Reversal and/or Remand [ECF No. 17]. Defendant filed an Opposition to Plaintiff's Motion for Reversal and/or Remand on September 29, 2020 [ECF No. 18].

For the following reasons, Plaintiff's Motion for Reversal and/or Remand is **DENIED**.

## I. BACKGROUND

Plaintiff George S. was born in 1963 and is a high school graduate. (Am. Admin. R. 46, ECF No. 13.)[3] He previously worked as a nightclub bouncer. (Id. at 48, 205.) On or about March 9, 2017, George S. filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. (Id. at 179-91.) He alleged that he had been disabled since June 6, 2015, due to heart, breathing, walking, and sleeping conditions. (Id. at 204.) Plaintiff's applications were denied on initial review and again on reconsideration. (Id. at 111-15, 119-23.) An administrative hearing was conducted on February 6, 2019, by Administrative Law Judge ("ALJ") Kevin W. Messer; on April 3, 2019, he issued a decision finding Plaintiff not disabled. (Id. at 15-25.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on February 26, 2020. (Id. at 1-4.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

/ / /

/ / /

---

[2] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

[3] The administrative record is filed on the Court's docket as multiple attachments. The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court cites to the page numbers affixed by CM/ECF.

**A. Medical History**

On October 1, 2015, George S. told his physician at UCSD Medical Group that he had been experiencing sharp pain in his left groin area since July 2015 and had been unable to work. (Id. at 381.) On February 24, 2016, Plaintiff, who previously had decompression fusion surgery at L4-5, reported a recurrence of low back pain with radiating symptoms into his left groin. (Id. at 360-62.) An MRI showed probable compression of the L2 and L3 nerves. (Id. at 362.) His condition did not improve and he underwent left total hip replacement surgery on January 4, 2017. (Id. at 306, 308.) Because the initial surgery failed, he was required to undergo revision left hip replacement surgery on February 15, 2017. (Id. at 531.) At a follow-up visit on March 23, 2017, Plaintiff's post-surgical pain in his left hip was thought to be originating from his lumbar spine. (Id. at 534-36.) By October 3, 2017, he had completed twenty sessions of physical therapy focused on lower extremity strengthening and flexibility. (Id. at 601.) In his discharge summary, the physical therapist indicated that George S. had a "fair response [to physical therapy] with continued objective improvements in overall [lower extremity] strength" but still reported pain and functional limitations. (Id.) Plaintiff reported that the pain level in his left hip at this time ranged from five to seven on a scale of ten. (Id. at 602.)

Plaintiff has a history of dilated cardiomyopathy (heart disease), heart failure, and chronic atrial fibrillation for which he was taking medication and was being monitored by Dr. Barry Greenberg, a cardiologist at the Sulpizio Cardiovascular Center at UCSD Health. (Id. at 396-97.) On June 7, 2016, George S. reported that he was experiencing shortness of breath. (Id. at 348-49.) Dr. Greenberg believed this was not related to Plaintiff's cardiac issues but rather to his musculoskeletal problems. (Id. at 349; see also id. at 337.) On July 11, 2017, the cardiologist indicated that Plaintiff was "doing well from a cardiac perspective." (Id. at 560.)

Fourteen months later, on September 18, 2018, Plaintiff underwent an internal medicine evaluation at Seagate Medical Group at the request of the Department of Social Services. (Id. at 570-75.) George S. denied any chest pain or shortness of breath. (Id. at 570.) He stated that he still experienced left hip pain despite his surgeries but did not require an assistive device to ambulate. (Id. at 571.) Plaintiff had decreased range of motion and tenderness in his left hip but a normal gait. (Id. at 574.) The examiner opined that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently and could stand, walk, or sit for six hours in an eight-hour workday. (Id.)

### B. ALJ's Decision

On April 3, 2019, the ALJ issued a decision finding that George S. was not disabled. (Id. at 15-25.) Judge Messer determined that Plaintiff had not engaged in substantial gainful activity since June 6, 2015, his alleged onset date. (Id. at 17.) He found that Plaintiff had the following severe impairments: "congestive heart failure, atrial fibrillation, nonischemic cardiomyopathy, degenerative disc disease of the lumbar spine, lumbago, lumbar radiculopathy, status post posterior decompression lumbar fusion, degenerative joint disease of the left hip status post 2017 total left hip arthroplasty with revision surgery, and trochanteric bursitis of left hip." (Id. at 17.) He also found that, singly or in combination, Plaintiff did not have impairments that met or medically equaled a listed impairment. (Id. at 19-20.) The ALJ further determined that George S. had the residual functional capacity to perform light work, with additional specified limitations. (Id. at 20.) The ALJ concluded that Plaintiff was capable of performing his past relevant work as a bouncer, and had not been under a disability from June 6, 2015, through the date of his decision. (Id. at 25.)

## II. LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42

U.S.C.A. §§ 405(g), 421(d) (West 2011). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled." Id. The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which

became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b) (2019). Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities. If not, the claimant is not disabled. Id. § 404.1520(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. Id. § 404.1520(d). If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four. Id. § 404.1520(e). Fourth, the Commissioner determines whether the claimant can do his or her past relevant work. If the claimant can do their past work, benefits are denied. Id. § 404.1520(f). If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Id. § 404.1520(g). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied. Id.

## III. DISCUSSION

Plaintiff makes two arguments. First, he contends that ALJ Messer failed to present a complete hypothetical to the vocational expert during the administrative hearing. Second, he claims that the ALJ failed to articulate any clear and convincing

reasons to reject George S.'s statements regarding his pain, symptoms, and limitations. (Pl.'s Mot. Attach. #1 Mem. P. & A. 3-12, ECF No. 17.)

**A. <u>Incorporation of Residual Functional Capacity into Hypothetical Question to Vocational Expert</u>**

The ALJ determined that Plaintiff retained the residual functional capacity[4] to work as follows:

> [George S. can] perform light work as defined in [20 C.F.R. §§ 404.1567(b) and 416.967(b)] with occasional lifting of 20 pounds, frequent lifting of 10 pounds; standing and/or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; occasional climbing of ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibrations, fumes, odors, gases, and other pulmonary irritants.

(Am. Admin. R. 20, ECF No. 13.) During the administrative hearing, Judge Messer provided the following hypothetical question to the vocational expert, Sonia Peterson, Ph.D.:

> I'd like you to assume a hypothetical individual the same age, education, work experience as the claimant in this case, with the following residual functional capacity: hypothetical individual would be limited to work at a light exertional level. In addition, the individual would be limited to occasional climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; and frequent balancing; occasional stooping, kneeling, crouching, crawling; further, the individual must avoid concentrated exposure to extreme cold, to extreme heat, to humidity and to vibration, and to fumes, odors, gases, and other pulmonary irritants. Based on that light [residual

---

[4] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. <u>See</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)).

> functional capacity], could the hypothetical individual do [Plaintiff's] past work?

(Id. at 65-66.) Dr. Peterson responded, "Yes." (Id. at 66.) The ALJ relied on this testimony in finding that Plaintiff was capable of performing his past relevant work as a bouncer as actually and generally performed, and thus was not disabled. (Id. at 25.)

Plaintiff contends that the ALJ failed to incorporate all of his residual functional capacity findings into the hypothetical question posed to the vocational expert. (Pl.'s Mot. Attach. #1 Mem. P. & A. 4, ECF No. 17.) Specifically, George S. argues that the ALJ's hypothetical question failed to include the "standing and/or walking for six hours in an eight-hour workday" limitation set forth in his residual functional capacity findings. (Id.) The Commissioner counters that because the ALJ asked about a hypothetical individual who could perform "light" work, and the full range of light work requires about six hours of standing or walking, the hypothetical question was sufficient. (Def.'s Opp'n 4, ECF No. 18.)

Under the Social Security Regulations, occupations are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. §§ 404.1567, 416.967 (2019). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Id. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. An individual must "have the ability to do substantially all of these activities" in order to be deemed "capable of performing a full or wide range of light work." Id. Social Security Ruling ("SSR") 83-10[5] provides further

---

[5] "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Bray v. Comm'r

clarification of the meaning of "light" work. The ruling states that "'[f]requent' means occurring from one-third to two-thirds of the time," and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983), at *6.[6] "Sitting may occur intermittently during the remaining time." Id. The "full range of work" is defined as "[a]ll or substantially all occupations existing at an exertional level." Id. Under SSR 83-10, therefore, substantially all light work requires standing or walking for approximately six hours of an eight-hour workday. The Commissioner relies on this ruling to support his position that "light work and standing/walking six hours are synonymous." (See Def.'s Opp'n 5, ECF No. 18.)

Numerous courts in this circuit, relying on SSR 83-10, have found that an ALJ's reference to "light work" or "medium work" (which, like light work, requires standing or walking for a total of approximately six hours in an eight-hour workday) encompasses a limitation to walking or standing for six hours in an eight-hour workday. See Talley v. Saul, Case No. 5:19-cv-2087-SK, 2020 WL 8361923, at *1 (C.D. Cal. Dec. 17, 2020) ("When the ALJ referred [to] 'the full range of light work' in the hypothetical posed to the VE, that reference necessarily encompassed the six-hour limitation on standing or walking."); Lawson v. Saul, Case No.: 3:19-cv-00045-W-JLB, 2020 WL 6055148, at *3 (S.D. Cal. Oct. 13, 2020) ("The plain language of SSR 83-10 and judicial interpretations of the regulation support the view that medium work does not require the ability to stand or walk for more than six hours per workday."); Christopher P. v. Saul, Case No. CV 18-

---

Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation omitted). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." Id. (citation omitted).

[6] Similarly, the full range of "medium" work "requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10, at *6.

6484-SP, 2020 WL 551596, at *3 (C.D. Cal. Jan. 31, 2020) (stating that ALJ's reference to medium work in hypothetical "sufficiently capture[d]" limitations in plaintiff's [residual functional capacity] to standing or walking for six hours in an eight-hour workday); Mitzi D. v. Saul, No. SA CV 18-01065-DFM, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-10 has been in play for over thirty years, there is no reason to think the VE understood light work to encompass anything other than approximately six hours of standing or walking."); James T. v. Saul, Case No. 2:18-cv-08794-KES, 2019 WL 3017755 (C.D. Cal. July 10, 2019) ("[T]he ALJ's reference to medium work supplied a 6-hour limitation on walking and standing, and the ALJ did not pose an incomplete hypothetical to the VE."); Goodman v. Berryhill, Case No. C17-5115 BAT, 2017 WL 4265685, at *8 (W.D. Wash. Sept. 25, 2017) (finding six-hour standing/walking restriction "is part and parcel of the definition of 'light work'"), aff'd 741 F. App'x 530 (9th Cir. 2018).

Plaintiff cites a single case, Linda H. v. Saul, No. CV 19-4321-PLA, 2020 WL 1244359 (C.D. Cal. Mar. 16, 2020), to support his view that the ALJ committed error by not including specific standing and walking restrictions in his hypothetical to the vocational expert. (Pl.'s Mot. Attach. #1 Mem. P. & A. 5, ECF No. 17.) In that case, the court held that the ALJ, who had included a six-hour walking or standing limitation in his residual functional capacity determination, erred by not incorporating this limitation in his hypothetical question to the vocational expert. Linda H., 2020 WL 1244359, at *5. The court reasoned that "SSR 83-10 does not specifically state that standing/walking occurs only six hours of an eight-hour workday, but instead that light and medium work require at least that amount . . . ." Id. This finding is inconsistent with the majority of the courts to have considered this issue. Moreover, the facts in Linda H. are distinguishable. There, the vocational expert testified that most "medium" jobs do not usually allow two hours of sitting, which is contrary to SSR 83-10 and indicates that the expert did not

possess the common understanding that medium work incorporates a limitation to standing or walking for six hours in an eight-hour workday. Here, in contrast, there is no indication that the vocational expert did not have this understanding. See, e.g., Guillermina R. v. Saul, Case No. 5:19-cv-02315-AFM, 2020 WL 5440341, at *3 (C.D. Cal. Sept. 19, 2020) (stating that an ALJ's reference to light or medium work "is widely understood to encompass the limitation to stand/walk for six hours in an eight-hour day"); see also James T., 2019 WL 3017755, at *2 ("SSR 83-10 was published in 1983. Since that time, ALJs and [vocational experts] with experience conducting social security disability benefits hearings have understood medium work as requiring the ability to stand or walk for up to 6 hours.").

Relying on the vocational expert's testimony, the ALJ found that George S. could perform his past work as a bouncer as actually and generally performed. (Am. Admin. R. 25, ECF No. 13; see also Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) ("A claimant must be able to perform [his] past relevant work either as actually performed or as generally performed in the national economy.").) According to Plaintiff's testimony and disability report, George S.'s past work, as actually performed, required him to walk and stand for eight hours each workday. (Am. Admin. R. 49, 206, ECF No. 13.) Thus, he did not perform this work at a light level, and the ALJ erred by finding that Plaintiff could perform his past work as actually performed. As Defendant observes, however, (see Def.'s Opp'n 6 n.5, ECF No. 18), this error was harmless because the ALJ properly found that George S. could perform his past work as generally performed. (See SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000), at *3 (explaining that "generally performed" refers to how a job is performed according to the Dictionary of Occupational Titles ("DOT").) Under the DOT, Plaintiff's previous work as a bouncer is classified as light work. See DICOT 376.667-010, 1991 WL 673176; see also Molina v. Astrue, 674 F.3d 1104, 1115

(9th Cir. 2012) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

This Court joins other courts in interpreting the language "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" in SSR 83-10 as encompassing a limitation to standing or walking for six hours in an eight-hour workday. Accordingly, when ALJ Messer referred to "work at a light exertional level" in the hypothetical posed to the expert, he fairly incorporated Plaintiff's limitation to walking or standing for six hours in an eight-hour workday.

**B. Subjective Symptom Evaluation**

Plaintiff's second argument is that the ALJ failed to articulate any clear and convincing reasons to reject George S.'s statements regarding his pain, symptoms, and limitations. (Pl.'s Mot. Attach. #1 Mem. P. & A. 3-12, ECF No. 17.) Defendant contends in response that the ALJ properly considered Plaintiff's statements about his subjective symptoms. (Def.'s Opp'n 7, ECF No. 18.)

An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, an ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (citing Garrison, 759 F.3d at 1014-15). In this analysis, the claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms alleged; nor is he required to produce objective evidence of the pain or its severity. Id. (citing Garrison, 759 F.3d at 1014-15). If the claimant satisfies step one of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear and convincing reasons" for doing so. Id.

Here, ALJ Messer determined that George S. satisfied step one of the two-step analysis. (Am. Admin. R. 24, ECF No. 13.) Nevertheless, he found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Id.) As discussed below, he articulated two reasons for his finding.

**1. Symptoms improved with treatment**

Plaintiff testified at the administrative hearing that he was working part-time as an Uber driver, but could only work for two to three hours a day because of back and hip pain. (Id. at 46.) He stated that the pain level in his back, when he was sedentary, had been eight on a scale of ten since his alleged onset date in 2015 and that his pain increased with activity. (Id. at 50.) He reported that he still had left hip pain despite his hip replacement surgery, had numbness that radiated down his left leg, and also needed to have right hip replacement surgery. (Id. at 53-54.) George S. testified that because of his heart condition, he experienced shortness of breath with any activity, including making his bed. (Id. at 54.) He acknowledged that medication helped his cardiovascular issues and stated that he would not be able to breathe without it. (Id. at 55.) He indicated that he had to lean on a shopping cart when he went to the grocery store and that he could only stand for ten to fifteen minutes before needing to sit down. (Id. at 56, 58.)

In finding that the limiting effects of George S.'s subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record, the ALJ observed that Plaintiff's "symptoms improved with treatment compliance, he has full strength in his extremities, straight leg raise testing has been negative during the relevant period, his cardiovascular symptoms are stable, and he does not require an assistive device to walk." (Id. at 24.) Substantial evidence in the record supports the ALJ's observations. Notwithstanding Plaintiff's testimony that his pain level has consistently been at eight on a scale of ten since 2015, his medical records demonstrate that he

reported a lower degree of pain to his providers, particularly when he complied with his medical treatment. After an initial period of inconsistent physical therapy attendance and compliance, (see id. at 549, 561), George S. participated in therapy regularly and reported pain levels in the four to seven range, (see id. at 567, 602, 612, 625). His physical therapist indicated that Plaintiff had "responded well recently due to improved attendance and compliance with [home exercise program] recommendations," and had objective improvement in strength, range of motion, flexibility, and balance. (Id. at 624.) At the conclusion of his physical therapy treatment, the therapist noted that although Plaintiff still reported pain and functional limitations, he had shown objective improvement in lower extremity strength and could address remaining deficits in strength and flexibility through home exercise. (Id. at 601.) His hips were at full or nearly full strength. (Id. at 602.) With respect to Plaintiff's heart conditions, George S.'s cardiologist consistently found that these conditions were stable. (See id. at 323 ("His heart failure has been under control."); 544 (reporting good medication compliance); 548 (walking after surgery "limited by his orthopedic issues rather than cardiovascular in nature"); 549 ("Plan no further med[ication] changes today as he is doing well and on optimal tolerated medical therapy."); 553 ("Was able to walk a mile and was cycling at home prior to [a recent setback] with no complaints."); 560 ("doing well from a cardiac perspective").) The evidence in the record also indicates that Plaintiff was able to perform mild exercise with no to little shortness of breath. (See id. at 579 (reporting no shortness of breath while biking on stationary bike at a slow pace); 596 (patient walking on a regular basis); 598 (modest exercise not limited by shortness of breath); 608 (some shortness of breath when housecleaning but able to walk on level ground for an extended period of time).)

An ALJ may properly consider whether treatment produced a fair response or satisfactory control of pain. See Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983); see also 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v); 416.929(c)(3)(iv)-(v). Further, "[i]mpairments

that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). The Court finds that the improvement of Plaintiff's symptoms with treatment and medication constituted a clear and convincing reason for the ALJ to discount his testimony regarding the severity of his symptoms.

**2. Daily activities**

Judge Messer reviewed the evidence of George S.'s daily activities and found them inconsistent with his allegations of disabling symptoms. (Am. Admin. R. 24, ECF No. 13.) An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective pain. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct, as well as whether the claimant engages in activities inconsistent with the alleged symptoms. Molina, 674 F.3d at 1112 (quotations and citations omitted). "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113 (citations omitted).

Here, the ALJ could reasonably conclude that George S.'s activities, including driving, shopping for groceries, traveling to New Jersey, and working part-time for Uber undermined his claims about the severity of his symptoms, (see Am. Admin. R. 24, ECF No. 13), as did Plaintiff's ability to perform mild exercise such as walking and biking, (see, e.g., id. at 579, 596). Plaintiff's daily activities constituted a clear and convincing

reason to discredit his testimony regarding the functional limitations caused by his symptoms.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reversal and/or Remand is **DENIED**.

This Order concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 7, 2021

Hon. Ruben B. Brooks
United States Magistrate Judge